IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | |
|---|---|
| CHANDRA PEARSON and MARKELL PEARSON,<br>    Plaintiffs,<br><br>v.<br><br>SATURN CORPORATION, a subsidiary of GENERAL MOTORS CORPORATION, and GENERAL MOTORS CORPORATION<br>    Defendants. | Case No. _____<br><br>Jury Demand |

## COMPLAINT

Plaintiffs Chandra Pearson and Markell Pearson, for their cause of action against the Defendant General Motors Corporation and Saturn Corporation, a subsidiary of General Motors Corporation, state as follows:

### PARTIES

1. Plaintiff Chandra Pearson is a citizen and resident of Saint Louis County, Missouri.

2. Plaintiff Markell Pearson is Chandra Pearson's husband. He is also a citizen and resident of Saint Louis County, Missouri.

3. Defendant General Motors is a for-profit corporation organized under the laws of the State of Delaware.

4. The Defendant Saturn Corporation is a subsidiary of General Motors Corporation. It is organized under the laws of the State of Delaware and is headquartered in Spring Hill, Tennessee.

5. Defendant General Motors and Defendant Saturn Corporation (hereafter collectively referred to as the "Defendants"), own and operate an automobile plant located at 100 Saturn Parkway, Spring Hill, Tennessee 37174.

6. Defendant General Motors Company's registered agent is Corporation Service company, located at 2908 Poston Ave, Nashville, TN 37203.

7. The Defendant Saturn Corporation's registered agent is CT Corporation System, with an address of 800 S. Gay Street, Suite 2021, Knoxville, TN 37929.

8. The acts or omissions alleged of herein occurred in Spring Hill, Tennessee, within the Middle District.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred under 28 U.S.C. § 1332 relating to diversity of citizenship of the parties because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this Court because Plaintiff's injury occurred in Maury County, Tennessee, located in the Middle District.

## ALLEGATIONS OF FACT

11. Plaintiff Chandra Pearson is a former commercial truck driver for PAM Transport Inc.

12. On December 5, 2016, Plaintiff arrived at the Defendants' plant in Spring Hill, Tennessee to deliver parts.

13. The Defendants require all visitors, including commercial truck drivers, to check-in with security in order to enter the property and make deliveries.

14. The Defendants control access to the facility using large, metal barrier arm operators which are manually controlled by the Defendants' security personnel. The barrier arm operator

2

is a type of security gate controlled by a cantilever system. It consists of a mechanical arm that moves in a vertical arc and is intended to control vehicular traffic flow.

15. The Defendants' security guard station is a partially-covered port with an office, which has three entry lanes for vehicles to park side-by-side during security screening.

16. Upon her arrival, Plaintiff parked in the second lane from the guard station. The Defendants require truck drivers to exit their vehicles and check in at the guard station.

17. The Defendants do not utilize a sidewalk or a marked pathway to guide drivers around the path of the barrier gate arms.

18. The Defendants' did not have any warning signs about the barrier gate arm, which did not have any audible warnings or buzzers when they were in use. The gate arms are not brightly colored or coated in reflective material to draw attention to pedestrians.

19. Unbeknownst to Plaintiff, one of the Defendant's security personnel had activated one of the barrier gate operators around the time she was exiting her vehicle. As Plaintiff walked toward the guard station, the metal gate arm came down from above. She attempted to duck and instinctively raised her arm to protect her head, but the gate arm struck her on the top of her neck. The impact was with such great force that it collapsed the nerves in her neck.

20. Another truck driver who was exiting the guard station caught Plaintiff and prevented her from falling to the ground.

21. One of the Defendants' security personnel had been watching the Plaintiff approach the guard station, but he did not attempt to stop the metal gate arm from closing prior to it striking Plaintiff. Immediately after the gate arm struck her neck, Plaintiff heard the guard state, "I have a cousin that's a lawyer if you want to sue."

3

22. Because of the risk of injury from barrier gate arms, barrier gate operators include numerous safety devices, including audio alarms, sensory loops to detect obstacles, automatic reverse functions, entrapment protection, sensors capable of stopping or reversing the gate, pressure relief devices that stop the gate or limit the force of impact, or an actuating device requiring guards to continuously press a button to close or open the gate.

23. By virtue of the fact that the barrier arm struck Plaintiff, the Defendants either did not utilize the aforementioned safety devices in their barrier arm operator, failed to ensure that the barrier arm operator's safety functions were properly maintained and in working order, and/or failed to train its security personnel in the safe and proper utilization of the barrier gate operator.

24. Although Plaintiff was in shock from the injury to her neck, she proceeded to the unloading area after checking in at the security station. As the Defendants unloaded the parts from her truck, her condition worsened. She developed a severe headache and blurred vision, and the pain in her neck intensified. Plaintiff reported what had transpired at the gate to another security guard working for the Defendants. That guard called the Defendants' human resources center, who said in words or substance, that they could not provide her medical assistance "because she was not incapacitated" and was not unconscious. The Defendants informed Plaintiff that she would have to seek medical attention off-campus.

25. After Plaintiff left the Defendants' facility, she pulled over on the side of the road and parked her truck in an area just past the Defendants' guard station. She radioed to her dispatcher at PAM Transport, who instructed her to seek medical treatment in Nashville, Tennessee. Because she was unable to drive her truck, she had to take a Lyft to Nashville,

4

where she remained in a hotel for three (3) days. Plaintiff's husband, Markell Pearson, drove down to Nashville to retrieve her personal property from the truck, and to take Mrs. Pearson back to their home in Missouri.

26. The impact of the Defendants' metal gate arm caused Plaintiff's spine to collapse on the nerves in her neck, causing great pain and suffering. Plaintiff underwent surgery and physical therapy, which will continue into the foreseeable future. Plaintiff has been unable to return to work. Due to the damage to her nerve, which became progressively more painful, Plaintiff was completely unable to walk for some time, and now requires the use of a cane in order to do so.

27. In addition to being a commercial truck driver, Plaintiff also owns and manages a moving company in Missouri. Because of the injury she sustained on the Defendants' property, she has been unable to continue working in her business, has had to pay others to perform the work that she is no longer able to perform, and her business has suffered from lost profits.

## CAUSE OF ACTION: NEGLIGENCE

28. The Defendants owed a duty of reasonable care to the truck drivers who delivered parts to their property. The Defendants duty included the obligation to maintain the premises in a reasonably safe condition and a duty to warn others of the existence of a dangerous condition so as to avoid foreseeable injuries to others, including the Plaintiff.

29. The Defendants created a dangerous condition via the installation and use of the barrier gate arms at the security guard station, and had actual or constructive notice of the condition prior to Plaintiff's injury and failed to warn Plaintiff.

5

30. The Defendants owed a duty to not create unsafe conditions on their premises likely to result in foreseeable harm to others, including the Plaintiff.

31. The Defendants owed a duty to use reasonable care to protect visitors, including the Plaintiff, from unreasonable risks of harm.

32. The Defendants breached their duty by failing to warn Plaintiff of the dangerous condition at the Defendants' guard station.

33. The Defendants breached their duty by failing to place appropriate warning signs or caution signs in the area in which truck drivers like Plaintiff were expected to walk.

34. The Defendants breached their duty by failing to use bright colors, reflectors, or an audible warning when the barrier gate arm was triggered and in motion.

35. The Defendants breached their duty by failing to inspect and maintain the barrier gate operator and to ensure that any built-in safety devices were in working order. In the alternative, the Defendants breached their duty by failing to install and/or upgrade existing barrier gate operators to include safety devices that would have prevented Plaintiff from being injured.

36. The Defendants breached their duty by failing to implement security screening protocol that did not require truck drivers to exit their vehicles and walk in a hazardous area.

37. The Defendants breached their duty by failing to train security staff in the safe use of the barrier gate arm and how to properly monitor the barrier gate arm in the presence of pedestrians.

38. The Defendants breached their duty by failing to protect those that enter the property, including Plaintiff, from an unreasonable risk of harm.

39. As a direct and proximate result of the Defendants' negligence, Mrs. Pearson suffered permanent injuries, extreme pain, physical suffering, permanent impairment, personal humiliation, mental and physical anguish, loss of enjoyment of life, loss of earning capacity, and the loss of her ability to be an able bodied wife.

40. Plaintiff incurred medical expenses for treatment of the injuries she received, and will continue to incur medical expenses in the future.

41. Plaintiff Markell Pearson asserts a claim for loss of consortium because the personal injuries suffered by his wife Chandra Pearson negatively affected and harmed, and still affects and harms their marital relationship, for the loss of society, and the loss of services of his wife.

## DAMAGES

42. Plaintiffs bring this suit for all damages recoverable under Tennessee law including, without limitation, damages for personal injury, for pain and suffering caused past and future, for loss of enjoyment of life past and future, for lost wages and lost profits, for impairment of Plaintiff's capacity to earn income, loss of consortium, loss of services, and for all medical expenses which are reasonable and necessary and made necessary by the negligence of the Defendants, including all economic damages, as defined in Tenn. Code. Ann. § 29-39-101(1), and all applicable non-economic damages, as defined in Tenn. Code Ann. § 29-39-101(2).

WHEREFORE, Premises Considered, Plaintiffs pray:

1. That process issue, requiring the Defendants to answer in the time prescribed by law;

2. That Plaintiffs be awarded a judgment from and against the Defendant for actual and compensatory damages in an amount in accordance with the proof;

7

Case 1:17-cv-00107 Document 1 Filed 12/04/17 Page 7 of 8 PageID #: 7

3. That Plaintiffs be awarded their court costs and discretionary costs in this matter;

4. For such other, general relief to which the Plaintiffs are entitled.

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

THE BLACKBURN FIRM, PLLC

_____
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com
*Attorneys for Plaintiffs*

8